```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
MARLON J. BARRERA,                                               COMPLAINT
                        Plaintiff,

            -against-                                            JURY TRIAL DEMANDED

NEW YORK CITY DEPARTMENT OF EDUCATION,
INGRID MONTILLA, AIDITH LLEWELYN,
MARIEL GUZMAN, NEW YORK COMMISIONER
OF EDUCATION, BETTY ROSA, SENIOR
EXECUTIVE DIRECTOR, CHRISTOPHER TRICARICO


                        Defendant.
---------------------------------------------------------------X
```

MARLON BERRERRA, ("Plaintiff"), by and through his attorney, DR. KISSINGER N. SIBANDA[1], complains of the Defendants, NEW YORK CITY DEPARTMENT OF EDUCATION, INGRID MONTILLA, AIDITH LLEWELYN, MARIEL GUZMAN, NEW YORK COMMISIONER OF EDUCATION, BETTY ROSA[2], SENIOR EXECUTIVE DIRECTOR, CHRISTOPHER TRICARICO, "defendants," and alleges upon knowledge as to himself and his own actions and upon information and belief as to all other matters, as follows:

**NATURE OF THE CASE**

1. This is a civil action based on violations of Plaintiff's rights as guaranteed him by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), Americans with Disabilities Act, the New York State Human Rights Law ("SHRL"), and the New York City Human Rights Law ("CHRL") as well as for Negligent Infliction of

---

[1] *Pro hac vice* pending.
[2] Policy makers under *Treadwell v. Cnty. of Putnam*, No. 14 Civ. 10137 (KMK), 2016 WL 1268279, at *4 (S.D.N.Y. Mar. 30).
03424- 357419.7

1
EMPLOYMENT COMPLAINT

Emotional Distress ("IEMD"). and any other cause(s) of action that can be inferred from the facts set forth herein.

2. Plaintiff's case is based on the lack of proper procedure and timeliness resulting in his December 3rd, 2023, dismissal being affirmed by the grievance Board. "This grievance practice essentially excluded his Equal Employment Remedies (herein, the policy).

3. The agreement binding plaintiff and others to compulsory grievances, Article XX, was authored by the Board f Education. Exhibit.1. It is their policy and practice.

4. Furthermore, this occurrence alleged here is not limited to Mr. Barrera alone, nor it is limited to one instance: where aggrieved facts, are adjudicated outside of the 300 EEOC window.

5. In 2017, Mr. Barrera received a favorable decision, dismissing a 2014 one day suspension. This was over two years later. First Arbitration. Second instance in which the 300-day window was violated. Accordingly, Mr. Barrera represents a class of litigants, and certification of such a class after some limited discovery by the court, would be judicious under Federal Rule of Civil Procedure Rule 23. This is notice to the court.

6. Plaintiff brings both federal and state claims in this action, and against the "defendants" rising from their actions, omissions and illegal behavior violating protected practices under various provisions of federal employment law, state and city employment law and human rights law.

7. Plaintiff alleges that Defendants and his agents wantonly, recklessly, knowingly, intentionally, and purposefully, acting individually and collectively, sought to and did deprive Plaintiff of his employment, position, title, and pay by terminating his

employment, through acts of harassment, abuse, discrimination based on age, national origin and retaliation.

8. Plaintiff alleges that the Defendant (New York Department of Education) and his agents intentionally and purposefully created a hostile work environment by discriminating against Plaintiff based on his gender (sexual harassment), and in retaliation for complaining of such discrimination to *inter alia,* NEW YORK CITY DEPARTMENT OF EDUCATION, INGRID MONTILLA, AIDITH LLEWELYN, MARIEL GUZMAN, NEW YORK COMMISIONER OF EDUCATION, BETTY ROSA, SENIOR EXECUTIVE DIRECTOR, CHRISTOPHER TRICARICO.

9. Said acts were known to Defendant his agents and employees, and were committed, encouraged, accepted and supported without regard for the damages and injuries that would result.

**TIMELINESS**

10. An individual claiming discrimination under Title VII, the Age Discrimination in Employment Act (ADEA) or the America Disability Act (ADA) must file a charge of employment discrimination with an administrative agency within 300 days of the alleged unlawful employment practice. See 42 U.S.C. § 2000e-5 (describing Title VII standard incorporated into ADEA by 29 U.S.C. § 626(d)(1)(B) and into ADA by 42 U.S.C. § 12117(a)). Similarly, under the NYSHRL, an individual must file a complaint "within one year after the alleged unlawful discriminatory practice." N.Y. Exec. Law § 297(5); see *Freudenthal v. County of Nassau*, 99 N.Y.2d 285, 290 (2003).

11. Plaintiff filed his SDHR complaint on December 5, 2023. Accordingly, Pliantiff's claims based on events that allegedly occurred prior to December 5, 2022 are time- barred. Plaintiff received a final termination on July 23, 2023 – it is this process he appeals as onerous: the delay tactics of the Office of Equal Opportunity & Diversity Management ( OEO)[3] indirectly depriving him of his EEOC remedies under Title VII.

12. Plaintiff's firing violated article XX's of the Union's agreement between The Board of Education and Board of Education Employees Local 372 on timeliness of any grievance procedure.

## JURISDICTION AND VENUE

13. Jurisdiction is invoked pursuant to 28 U.S.C. §§1331 and 1343 and Title VII. Supplemental jurisdiction is invoked for the state claims.

14. Venue is appropriate in this court pursuant to 28 U.S.C. § 1391(b)(ii), as all actions comprising the claims for relief occurred within this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

15. On June 24,2024 Plaintiff received an email from EEOC, giving him notice of his right to sue because he was unable to login to the EEOC portal. The email is attached as Exhibit: 1. EEOC informed Mr. Barrera, through his attorney, of the change of notice date on June 27th, 2024. This compliant is timely.

16. Plaintiff also received a pending decision letter from the New York Human Rights Office, requesting a reply by September 18th, 2024. Consequently, the EEOC finality is

---

[3] Plaintiff requits leave to join a class similarly situated who have suffered because of this practice of deliberate delays. In due course.

earlier than the Human rights decision; because ethe EEOC filing date and human rights exhaustion conflict, this matter is timely to preserve Mr. Barrera's Title VII rights.

17. O September 10, 2023, an arbitration award was submitting upholding Mr. Barrera's termination. Barrera thereafter filed a complaint with the EEOC addressing that decision on **December 5th, 2023**.: essentially hearings that occurred on January 19th, 2023, March 3rd, 2023, June 5th, 2023, and June 20, 2023, for a December 13, 2021 termination. Arbitrated decision was close to 600 days after termination date. This essentially missed EEOC's first filing deadline of 300 days from the incident: Mr. Barrera cannot address the underlying firing of **December 13, 2021,** in court

## PARTIES

18. At all relevant times, Plaintiff was and is a resident of the County of New York, State of New York.

19. All defendants are sued in both their official and unofficial positions.

20. At all relevant times, NEW YORK CITY DEPARTMENT OF EDUCATION, INGRID MONTILLA, AIDITH LLEWELYN, MARIEL GUZMAN, NEW YORK COMMISIONER OF EDUCATION, BETTY ROSA, SENIOR EXECUTIVE DIRECTOR, CHRISTOPHER TRICARICO, and as such he is amenable to suit, as provided in § 717(c) of 42 U.S.C. §2000e-16 (c), and other applicable statute(s), who is the appropriate Defendant herein.

21. Ingrid Manilla and Aidith Llewelyn were supervisors of Plaintiff. While Mariel Guzman was manager.

22. New York City Department of Education is an employer of defendants Llewelyn, Guzman, Rosa and Tricarico.

23. Policymakers means, defendant Rosa and Tricare, who are responsible for the Union 37 agreement.

## FACTS

24. Plaintiff is currently a 54-year-old Ecuadorian American male. He was born with a congenital eye defect on the right eye, rendering him blind. Defendants were aware of this condition but never processed his request for accommodation.

25. On or about July 24, 2019, Plaintiff filed a complaint with the SDHR in which he alleged discrimination on the basis of age, disability, marital status and national origin pursuant to the Title VII, the ADA, the ADEA and the NYSHRL (SDHR Case No.10202967). NYCDOE submitted a position statement in response to Plaintiff's SDHR complaint on September 18, 2019.

26. Plaintiff had five Personnel Performance Conferences ("PPC"), several suspensions and received numerous warnings that his "continued insubordination" could lead to further disciplinary action such as additional suspensions or termination of his employment, that were baseless and driven by shear hatred of plaintiff because of his ethnic origins, age and disability.

27. Mr. Barrera's complaint for early instances resulted in more write ups and retaliatory actions by defendants.

28. . On March 3, 2021, Ms. Guzman joined a conversation in the kitchen at Middle School

324 Patria Mirabal between the cook-in-charge and Plaintiff concerning a delivery. When Ms. Guzman stepped aside to clarify something about the delivery with the cook-in-charge, Plaintiff asked Ms. Guzman and stated, "What are you saying?". Fearing for her safety and cognizant of social distancing protocol implemented in the building due to the ongoing Covid-19 pandemic, Ms. Guzman asked Plaintiff to stand away from her. Every conversation with Plaintiff was treated as a potential blow-up or hostile interaction.

29. On March 4, 2021, after Plaintiff had finished washing fruit in the kitchen, Plaintiff was directed by the cook-in-charge to wash pots and pans. The cook-in-charge and the assistant cook claimed plaintiff was leaning against a rack in the and failed to adhere to social distance protocol. A complete fabrication

30. On March 5, 2021, Plaintiff was assigned to organize 150 clear 5x3x15 bags with milk, utensils and apple slices and only fill 50 out of the 150 bags with tortilla scoops. Plaintiff in the most economic manner given his disability. On March 8, 2021, Ms. Guzman requested to meet with Plaintiff about his performance and professional misconduct, Plaintiff declined to attend the meeting and left work early without requesting permission from his supervisors.

31. On March 10, 2021, Ms. Guzman met with Plaintiff, the-cook-in-charge and the assistant cook to discuss the events of March 4, 2021, March 5, 2021, and March 8, 2021. During the meeting, Plaintiff stated that he was not having the meeting without union representation and referred to Ms. Guzman by her first name. A valid procedural objection.

32. On March 24, 2021, Ms. Guzman had a meeting with Plaintiff to discuss his recent "unsatisfactory work performance and instances of professional misconduct" which led to two warning letters issued to his file. All fabricated.

33. During the meeting Ms. Guzman informed Plaintiff and falsely claimed that his actions were obstructing the productivity of the kitchen and creating an intimidating environment for his colleagues. Ms. Guzman also reminded Plaintiff that his "insubordination" was a violation of the standard of conduct for the OFNS employees to maintain "a high standard of courtesy, attention to duty and personal behavior is required of all employees of the Department of Education." Continued harassment and escalation of incidents.

34. Ms. Guzman also reminded plaintiff that employees were expected to always conduct themselves in a professional manner and speak in a normal tone of voice. Ms. Guzman also informed plantiff that continued "unsatisfactory" work performance would lead to further disciplinary action which could result in the termination of his employment. All false allegation intended to intimidate plaintiff.

35. On June 8, 2021, a Personnel Performance Conference ("PPC") was held to discuss Plaintiff's so called "professional misconduct." During the PPC, the laundry list against Plaintiff's regarding his persecution was rehashed, this included allegations of "insubordination and poor performance ." Upon review, the hearing officer attempted to conclude that the NYCDOE had consistently engaged in classic progressive discipline and falsely asserted that plaintiff had been afforded an opportunity to correct his

behavior and transferred him on numerous occasions to allow him a fresh start. They claimed: "despite five previous PPCs, numerous warnings, support and past suspensions, falsely stating plaintiff had continued to exhibit the same disruptive response and aggression to his supervisors." All false allegations.

36. Mr. Barrerra was persecuted and written up for factually inaccurate allegations, masterminded by Ms. Mancilla and others in the March 4th-10th, incidences.

37. Underlying this procedure to fire Mr. Barrera while depriving him of his Title VII rights, are the hard facts, showing a pattern of heightened and microscopic scrutiny targeting Mr. Barrera at the workplace, such as oversight.

38. Mr. Barrerra has worked at DOE schools since 1989 as a school aide and school lunch helper.

### A. 2014 Suspension

39. In March 2013, Plaintiff received a disciplinary letter to file due to a series of "unsatisfactory evaluations."

40. In May 2014, following a personnel performance conference,[2] Plaintiff received notice he would be suspended without pay for one day that following September for conduct "unbecoming and gross misconduct stemming from incidents of insubordination and threats against a principal's authority." A false allegation.

### B. 2016 Suspension

41. In 2016, Plaintiff was suspended for 10 days due to a series of incidents involving conduct deemed "unbecoming, gross misconduct, and insubordination."

42. Ultimately Plaintiff's 10-day suspension was authorized on November 28, 2016,

following a formal personnel performance conference. A complete fabrication.

### C. 2017 Suspension

43. On December 7, 2017, Plaintiff was suspended for five days due to a series of incidents involving "conduct unbecoming, gross misconduct, and insubordination." A complete fabrication.

44. Following a grievance conference in 2018, Plaintiff's five-day suspension was upheld 2018 Suspension.

45. On October 2, 2018, Plaintiff was again suspended again for five days as a result of a series of incidents deemed involving conduct unbecoming, insubordination constituting "gross misconduct, and unsatisfactory work performance." Another fabrication.

### D. 2019 Suspension

46. On June 11, 2019, following a personnel performance conference, Plaintiff was issued a notice of suspension without pay for a period of two days, to be served in September 2019. Another fabrication of circumstances.

47. Every disciplinary action complained of resulted from persecution at the workplace. Where similar situated employees received disparate treatment an leniency because eof their age and national origin.

44. When considering that Mr. Barrera was merely a cook's assistant, the disciplinary record is remarkable in the continued persecution: Including, for example, in 2016 Barrera was sent to a psychological evaluation on by Ingrid Montilla without his permission.

45. On February 26, 2016, Mr. Barrera filed a harassment incident report with the police,

...

precinct 030, addressing a conversation with

46. Mr. Barrera was given an accommodation form without being told what the form was for. He was told it sign it.

## FIRST CLAIM
*(Hostile Work Environment – Title VII)*

*( as to all defendants excluding policy makers)*

47. Plaintiff in cooperates paragraphs 1-46, as if it is fully pleaded, with the same force and citations as above and alleges: Defendants, by and through its employees, subjected Plaintiff to a hostile work environment in violation of Title VII, by directing unwelcome hostile conduct at him based on his national origin, disability and age. Such conduct consists of defendants pervasively making national origin, age based *disparate* treatment in the workplace, including, *inter alia,* asking Plaintiff write-ups that were manufactured for the simplest of reasons intended to paint plaintiff as a bad worker. These write-ups, or suspensions, were not episodic but continuous, planned and willful.

## SECOND CLAIM
*(Retaliation – Title VII)*
*( as to all defendants excluding policy makers)*

48. Plaintiff in cooperates paragraphs 1-46, as if it is fully pleaded, with the same force and citations as above and alleges: Defendants, by and through its employees, subjected Plaintiff to adverse employment actions, including termination because of his complaints of discrimination and harassment. Such motivations can be inferred by, amongst other things, Defendant's failure to conduct a proper investigation and to discipline the offender; disapproving Plaintiff's time and leave; accusing Plaintiff of improperly

performing various functions of his job; trying to sabotage Plaintiff's employment by providing him with improper instructions of how to perform his job duties; threatening Plaintiff with termination.

### THIRD CLAIM
(*ADA – Disability Accommodation*)
*(As to all defendants)*

49. Plaintiff in cooperates paragraphs 1-46, as if it is fully pleaded, with the same force and citations as above and alleges: Defendants, by and through Plaintiff's immediate supervisors to acts of intentional sexual harassment by way of subjecting Plaintiff to unwelcome sexual conduct by insisting that Plaintiff remove his shirt to reveal his tattoo, while alone in JM's office, separated from the view of other employees. Plaintiff complied with JM's request for fear of losing his job. JM told Plaintiff that if he came to her office to "earn [his] time back", she wouldn't require him to utilize a sick day. When Plaintiff refused to allow JM to touch him, she threatened to discipline him or refused to process his time and leave and was terminated.

### FOURTH CLAIM
(*Title VII – Atmosphere of Adverse Actions*)
*(As to all defendants)*

50. Plaintiff in cooperates paragraphs 1-46, as if it is fully pleaded, with the same force and citations as above and alleges: Defendants, by and through its employees, subjected Plaintiff to a continued atmosphere of adverse employment actions from at least June 2010 through Plaintiff's termination in April 2016. The totalities of these actions

combine to constitute an atmosphere of adverse action in violation of Title VII[4].

## FIFTH CLIAM
(Monell Liability)
*(as to policy makers: Rosa and Tricarico)*

51. Plaintiff in cooperates paragraphs 1-46, as if it is fully pleaded, with the same force and citations as above and alleges: defendants through their policies and practices deprived Barrera of his constitutional right to a timely Title VII action. Barrera filed a timely notice of claim with the City of New York.

52. Alternatively, plaintiff asserts: Plaintiff served a "written verified claim upon which such action or special proceeding is founded," on the governing arm of the school district, and did this within three months of the time her claims accrued satisfying N.Y. Educ. Law § 3813(1). These administrative complaints met § 3813's requirements of notice before filing this instant lawsuit. Courts have held that filing an EEOC or SDHR complaint may satisfy the notice of claim requirement, see, e.g., *Berrie v. Bd. of Educ. of Port Chester-Rye Union Free Sch. Dist.*, No. 14-CV-6416, 2017 WL 2374363, at *8 (S.D.N.Y. May 31, 2017), aff'd, 750 F. App'x 41 (2d Cir. 2018). See also, *Bagarozzi v. N.Y.C. Dep't of Educ.*, No. 18-CV- 4893 (RA), 7 (S.D.N.Y. Mar. 31, 2019).

53. By sending Barrera *on a wild goose chase (an alternative grievance process)*, Barrera's claims were rendered moot, *after the goose chase was over*. Barrera was obligated under Article XX, Union 37 contract to participate in this *wild goose chase*.

54. Policy makers know of Title VII; and deliberately created the alternation union 37

---

[4] Plaintiff brings to the attention of the bench, the doctrine of equitable toiling, which can be briefed separately should the Court deem appropriate or during the anticipated motion to dismiss.

grievance process to circumvent Title VII – that police is herein termed, "the policy of no-finality").

55. In practice this policy allows the New York City Board of education to take as much as it wishes, while depriving an injured party, such as Barrera, of the statutory 300 days window to claims.

56. This policy is willful and designed to circumvent Title VII.

## SIXTH CLIAM
## VIOLATION OF TITLE I ADA:
## (Disability)
*( as to all defendants)*

57. Plaintiff repeats, reiterates, and asserts each allegation contained in the previous paragraphs, 1-53, with the same force and effect as if fully set forth herein AGAINST Defendants. Because of his denials of reasonable accommodation Barrera was subject to a harsh and hostile work environment. By refusing to accommodate the fact that his right eye is blind, Barrera struggled in his work.

## SEVENTH CLIAM
## VIOLATION OF CITY AND STATE HUMAN RIGHTS LAWS:
## (CHRL and SHRL)

58. Plaintiff repeats, reiterates, and asserts each allegation contained in the previous paragraphs, 1-56, with the same force and effect as if fully set forth herein AGAINST all Defendants. DEFENDANTS UNDERMINED, humiliated, and disregarded Me. Barrera's right to dignity, and a documented pattern of a hostile work environment

because of disability, age and national origin in disparate[5] treatment and a hostile environment. Including, refusal to allow Mr. Barrera to have the same pecks and treatment as other similar situated works – who were similar situated by employee rank and performance.

## EIGHT CLIAM
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS.
*(As to all defendants).*

59. Plaintiff repeats, reiterates, and asserts each and every allegation contained in the previous paragraphs, 1-58, with the same force and effect as if fully set forth herein AGAINST all Defendants. Through defendants' negligent actions of ridicule, slurs, and hostile work environment towards plaintiff, Mr. Barrera, developed emotional stress. Defendants owed Mr. Barrera a duty of care and that duty was violated when the workspace became hostile and oppressive towards Mr. Barrera. Defendants negligently caused Mr. Barrera's mental stress due to their lack of accommodations, age and national origin harassment. As well as policies to delay his employment grievance procedure.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands judgment against Defendant, were applicable, for all

---

[5] *Id.*

compensatory, emotional, physical, and punitive damages (where applicable), lost pay, front pay, loss of benefits, reinstatement, injunctive relief, liquidated damages (where applicable) and any other damages permitted by law.  It is further requested that this Court grant reasonable attorneys' fees and the costs and disbursements of this action and any other relief to which Plaintiff is entitled.

Dated: Washington DC
       September 23, 2024

                                DR. KISSINGER N. SIBANDA, PLLC
                                *Attorney for Plaintiff*
                                PO Box 714
                                Livingston, New Jersey 07039

                 By:    *Kissinger N. Sibanda*[6]
                                Dr. Kissinger N. Sibanda Esq
                                *Pro Hac Vice Motion Forthcoming*

---

[6] *Pro hac* vice motion forthcoming

03424- 357419.7

16
EMPLOYMENT COMPLAINT