UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————x

MARLON J. BARRERA,

                 Plaintiff,

        -against-                                                    24-cv-7194 (CM)

NEW YORK CITY DEPARTMENT OF EDUCATION,
INGRID MONTILLA, AIDITH LLEWELYN,
MARIEL GUZMAN, NEW YORK COMMISSIONER
OF EDUCATION, BETTY ROSA, SENIOR
EXECUTIVE DIRECTOR, CHRISTOPHER TRICARICO,
MELISSA AVILES-RAMOS, JOHN DOES (1-10),
POLICY MAKERS,

                 Defendants.

————————————————————————x

## DECISION AND ORDER GRANTING DEFENDANTS'
## MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

McMahon, J.:

Plaintiff Marlon Barrera, a former employee of the New York City Department of
Education ("DOE"), brings this action against the DOE and various individuals whom Plaintiff
identifies as DOE employees; they are sued in both their official and personal capacities. Plaintiff
alleges that Defendants violated his rights under Title VII of the Civil Rights Act of 1964, 42
U.S.C. § 2000e, *et seq*. ("Title VII"), Americans with Disabilities Act, 42 U.S.C. §§ 12112–12117,
*et seq*., ("ADA"), the New York State Executive Law §§ 290, *et seq*. ("SHRL"), and the New York
City Administrative Code §§ 8-101, *et seq*. ("CHRL"). Plaintiff also asserts a *Monell* claim and a
claim for negligent infliction of emotional distress.

Defendants have moved to dismiss Plaintiff's Second Amended Complaint. That motion is
GRANTED.

## BACKGROUND

The following facts are taken from the Second Amended Complaint ("SAC").[1] *See* Dkt. No. 47. On a motion to dismiss, the court "accept[s] as true the factual allegations contained in the complaint and draw[s] all inferences in plaintiff's favor." *Glob. Network Commc'ns Inc. v. City of New York*, 458 F.3d 150, 154 (2d Cir. 2006) (citing *Allair Corp. v. Okumus*, 433 F.3d 248, 249–50 (2d Cir. 2006)).

Plaintiff is a 54-year-old Ecuadorian American male. He was born with a congenital eye defect, rendering his left eye blind.

From 1989 until he was fired in 2023, Plaintiff worked as a school aide and lunch helper at DOE schools. This lawsuit alleges that, while Plaintiff was employed at DOE, DOE employees discriminated against him based on his national origin, age, and disability.

Most of the SAC is devoted to describing Plaintiff's eight-year long history of progressive disciplinary action. Despite conceding that most of these allegations are time barred and so cannot be the basis for a claim, Plaintiff argues that this history demonstrates a "pattern of heightened and microscopic scrutiny targeting" him due to his national origin, age, and disability, which he claims ultimately led to his termination in July of 2023. SAC, ¶ 38.

---

[1] "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010). The court therefore considers the exhibits attached to the SAC in considering Defendants' motion to dismiss.

The court will also consider the exhibits proffered by the Defendants in support of their motion to dismiss, which are attached to the declaration of Karen Rhau. *See* Dkt. No. 52, at 3 n.2. Two of those exhibits – Plaintiff's 2019 and 2023 SDHR complaints – are specifically mentioned in the SAC. SAC, ¶¶ 12, 26. Plaintiff pleads around the fact that the SDHR issued a January 21, 2020 decision finding that the DOE did not discriminate against him and dismissing his 2019 complaint, but that decision is a matter of public record, of which the court may take judicial notice. *Casey v. Odwalla, Inc.*, 338 F. Supp. 3d 284, 294 (S.D.N.Y. 2018). It is discussed in the text, *passim* The fact that the EEOC sent DOE a notice notifying it that Plaintiff had filed charged is discrimination in 2023 can be fairly implied from the fact that the EEOC ultimately issued Plaintiff a right to sue letter (which has no merits implications at all) and this lawsuit was filed. All of these documents are necessarily comprehended by the SAC.

In March 2013, Plaintiff received a disciplinary letter "due to a series of unsatisfactory evaluations." SAC, ¶ 40. In May 2014, Plaintiff received a one-day suspension for "conduct unbecoming and gross misconduct stemming from incidents of insubordination and threats against a principal's authority." SAC, ¶ 41. In December 2017, Plaintiff received a five-day suspension, which he similarly alleges was "due to a series of incidents involving conduct unbecoming, gross misconduct, and insubordination." SAC, ¶ 44. In October 2018, Plaintiff was again suspended for five days, also "as a result of a series of incidents involving conduct unbecoming, gross misconduct, and insubordination." SAC, ¶ 46. Finally, in June 2019, Plaintiff received a two-day suspension following a Personnel Performance Conference ("PPC").

Plaintiff filed a complaint with the New York State Division of Human Rights ("SDHR") on July 24, 2019, alleging that the DOE discriminated against him based on age, marital status, and national origin. SAC, ¶ 26. The text of the complaint reveals that in filing this charge, Plaintiff relied on the disciplinary actions he was allegedly subjected to between 2014 and 2019 as the basis for his complaint. The SAC does not allege what happened to this complaint, but as noted in n.1, the SDHR dismissed his complaint, finding that there was no probable cause to conclude that DOE had discriminated against the Plaintiff in connection with any of the acts alleged. The fact that Plaintiff artfully pleaded around the results of his SDHR action by alleging that a complaint was filed but not revealing the result is something this court can take into account on his motion to dismiss.[2]

---

[2] While it is not strictly necessary to reach this issue, the fact that the SDHR actually considered Plaintiff's original complaint and ruled it meritless would likely make the information about Plaintiff's earlier allegations inadmissible at trial, notwithstanding the fact that otherwise time-barred acts of discrimination may be admitted to give context to timely claims. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). When there has been an adjudication that the earlier allegations are without merit, however, they become irrelevant.

After the SDHR found no probable cause to sustain Plaintiff's first discrimination claim, Plaintiff alleges that he was "persecuted and written up for factually inaccurate allegations" based on a series of incidents in March 2021.

Plaintiff asserts that on March 3, 2021, he was involved in a conversation with a manager named Ms. Guzman about a delivery in the school kitchen. Plaintiff claims that, when he asked Ms. Guzman to repeat a statement she had made, Ms. Guzman asked Plaintiff to stand away from her, "fearing for her safety and cognizant of social distancing protocols implemented in the building due to the ongoing Covid-19 pandemic." SAC, ¶ 29. Plaintiff contends that, based on this interaction, "Every conversation with [him] was treated as a potential blow-up or hostile interaction." SAC, ¶ 29.

On March 4, 2021, Plaintiff claims that the cook-in-charge and assistant cook falsely accused him of leaning against a rack and failing to adhere to social distancing protocols. According to Plaintiff, this was a "complete fabrication." SAC, ¶ 30.

On March 5, 2021, Plaintiff alleges that he was assigned to organize several clear bags with milk, utensils, and apple slices, which he did "in the most economic manner given his disability." SAC, ¶ 31.

On March 8, 2021, Ms. Guzman asked to meet with Plaintiff to discuss his performance. Plaintiff "declined to attend the meeting and left work early without requesting permission from his supervisors." SAC, ¶ 31.

On March 10, 2021, Plaintiff met with Ms. Guzman, the cook-in-charge, and the assistant cook to discuss the events described above. Aside from stating that Plaintiff referred to Ms. Guzman by her first name and objected to the meeting proceeding without union representation, the SAC contains no allegations concerning what occurred at this meeting.

4

On March 24, 2021, Plaintiff had another meeting with Ms. Guzman to discuss his recent "unsatisfactory work performance and instances of professional misconduct." SAC, ¶ 34. Plaintiff alleges that, during this meeting, Ms. Guzman "falsely claimed that his actions were obstructing the productivity of the kitchen and creating an intimidating environment for his colleagues." SAC, ¶ 34. Ms. Guzman informed Plaintiff that his continued unsatisfactory work performance would lead to further disciplinary action, including potential termination.

On June 8, 2021, a PPC was held to discuss Plaintiff's professional misconduct. At the PPC, a hearing officer told Plaintiff that "despite five previous PPCs, numerous warnings, support and past suspensions," he "continued to exhibit the same disruptive response and aggression to his supervisors." SAC, ¶ 36.[3] According to Plaintiff, each PPC, suspension, and notice was "baseless and driven by shear hatred of plaintiff because of his ethnic origins, age and disability." SAC, ¶ 27. Plaintiff further alleges that his "complaint for early instances resulted in more write ups and retaliatory actions by defendants." SAC, ¶ 28. The SAC does not contain any information about what those write ups were for or when they took place.

Despite his allegation that these 2021 disciplinary actions were without merit and constituted discrimination against him, Plaintiff did not file an administrative charge with the EEOC or the SDHR with respect to any of them. Once 300 days passed from the date on which the last of these events took place (June 8, 2021) – in other words, from and after April 4, 2022 – all of these matters ceased to be actionable under Title VII. The statute of limitations under the NYSHRL and the NYCHRL is three years from the date of the alleged act of discrimination, so Plaintiff's claims about his 2021 discipline were not time barred under state or city law when they became time barred under federal law.

---

[3] The SAC does not contain any allegations about the previous PPCs – specifically about when they were filed or what they concerned. However, Plaintiff concedes that they were in fact filed. See SAC, ¶¶ 27, 36.

Plaintiff was ultimately fired by the DOE two years later, on July 23, 2023. As noted above, the SAC contains no allegations about complaints or disciplinary actions that were or may have been taken during the two year period between the June 8, 2021 PPC and his termination.

On December 5, 2023, Plaintiff alleges that he filed an EEOC charge. The court does not have a copy of any charge that may have been filed directly with the EEOC. The record does, however, contain a copy of a second SDHR complaint, filed on December 5, 2023, which would qualify as an EEOC charge under the Worksharing Agreement between the EEOC and NYSDHR. The SDHR complaint, Dkt. No. 53-3, alleges that plaintiff was the victim of age, disability, and national origin discrimination based on the various disciplinary actions taken against Plaintiff between 2013 and 2021. It also alleges that his firing constituted discrimination. It does not identify any action that took place between 2021 and the day he was fired.

In his pleading, Plaintiff acknowledges that any "claims based on events that allegedly occurred prior to December 5, 2022, are time-barred." SAC, ¶ 12. This lawsuit challenges Plaintiff's final termination on July 23, 2023, as well as the "process," that "indirectly depriv[ed] him of his EEOC remedies under Title VII." *Id.* Plaintiff does not affirmatively allege that he received a right to sue letter from the EEOC; however, Plaintiff attaches to his SAC an email from the EEOC indicating that a right to sue letter was issued in January of 2024, which Plaintiff was did not become aware of until June 24, 2024. *See* SAC, Ex. 1.

*Summary of Pleadings*

Plaintiff filed his initial complaint in this court on September 23, 2024, alleging discrimination based on age, national origin, and disability. Dkt. No. 1. The initial complaint asserted federal and state law causes of action under Title VII, the ADA, the CHRL, and the SHRL, as well as a *Monell* claim and a claim for negligent infliction of emotional distress. Significantly,

September 23, 2024 is more than three years after the last pleaded act of discrimination that took place prior to Plaintiff's firing – the June 8, 2021 PPC evaluation.

On October 10, 2024, Plaintiff filed a first amended complaint ("FAC") as a matter of right, as authorized by Fed. R. Civ. P. 15(a)(1), adding Melissa Aviles-Ramos (who is the Superintendent of Schools) and John Does 1-10 as defendants. Dkt. No. 26. As with the other individually named defendants, Ms. Aviles-Ramos and John Does 1-10 were named in both their official and personal capacities. The addition of these parties appears to be the only substantive difference between the original complaint and the FAC. Not a single fact is alleged in the FAC tending to show that Superintendent Aviles-Ramos was involved in any way in the decision to fire Plaintiff or in any other disciplinary action taken against him. Similarly, the FAC fails to allege any specific facts about the conduct of any of the John Doe Defendants.

On January 30, 2025, the court granted Plaintiff leave to file a Second Amended Complaint, in order to allow Plaintiff to allege that he had filed a notice of claim against the City, as required before he was permitted to sue on his non-federal claims. New York Education Law § 3813(1). The SAC was filed on February 10, 2025. Dkt. No. 47. The only difference between the FAC and the SAC appears to be the allegation that the City of New York has a record of Plaintiff's notice of claim, which Plaintiff claimed to be in the process of locating. SAC, ¶ 56. The SAC, like its predecessor, alleges no specific facts tending to show who any of the John Doe Defendants are or what actions they took that harmed Plaintiff; similarly, it alleges no facts tending to demonstrate personal involvement of the Superintendent in any matters affecting Plaintiff's employment.

*The Instant Motion*

Defendants DOE and Ms. Aviles-Ramos (together, "Defendants") now move, pursuant to Fed. R. Civ. P. 12(b), to dismiss the SAC in its entirety, on the following grounds: (1) Plaintiff fails

7

to plausibly plead a violation of his constitutional rights and therefore his *Monell* claim should be dismissed; (2) Plaintiff's claims against Ms. Aviles-Ramos should be dismissed for failure to allege her personal involvement; (3) Plaintiff's SHRL and CHRL discrimination claims are barred by the election of remedies doctrine and because of Plaintiff's failure to file a timely notice of claim; (4) Plaintiff's negligent infliction of emotional distress claim must be dismissed for failure to timely file a notice of claim; (5) Plaintiff's Title VII, ADA, SHRL, and CHRL claims are time-barred; and (6) Plaintiff has otherwise failed to state a plausible claim for relief under Title VII, ADA, the SHRL, the CHRL, or for negligent infliction of emotional distress.

Defendants Ingrid Montilla, Aidith Llewelyn, Mariel Guzman, Christopher Tricarico, Betty Rosa, and John Does 1-10 have not appeared in the action. It does not appear that any of them was ever served with process. The only factual allegation in the SAC that relates to any of these individuals is the allegation about the interactions between Plaintiff and Guzman that took place in the spring of 2021, more than three years before the original complaint was filed, and as to which no timely charge of discrimination was ever filed.

For the reasons set forth below, Defendants' motion to dismiss is GRANTED. Because Plaintiff, who is represented by counsel, has not been able to file a competent pleading after three tries, the motion is granted WITH PREJUDICE, and this case is CLOSED.

## LEGAL STANDARD

### I.    Rule 12(b)(6) Motion to Dismiss

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A]ll reasonable inferences should be drawn in favor of the plaintiff," but

8

the "complaint must contain sufficient allegations to nudge a claim 'across the line from conceivable to plausible.'" *Sphere Digital, LLC v. Armstrong*, 2020 WL 6064156, at \*4 (S.D.N.Y. Oct. 14, 2020) (quoting *Twombly*, 550 U.S. at 555). Where a plaintiff fails to "nudge[] their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570. Rule 12(b)(6) "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of" the truth of the allegations. *Id.* at 545.

## DISCUSSION

## I.    All Claims Against Defendants Ingrid Montilla, Aidith Llewelyn, Mariel Guzman, Christopher Tricarico, and Betty Rosa are Dismissed For Failure to Serve with Process

Defendants Ingrid Montilla, Aidith Llewelyn, Mariel Guzman, Christopher Tricarico, and Betty Rosa (collectively, "Individual Defendants") have not appeared in this case and they have not moved for dismissal of the action against them. Nonetheless, the court *sua sponte* dismisses the case against them, for multiple reasons.

*Fir*st, none of these five individuals has been properly served with process.

Federal Rule of Civil Procedure 4(m) provides that "If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff— must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). If a plaintiff shows "good cause for the failure" to satisfy the service requirements of Rule 4, then "the court must extend the time for service for an appropriate period." *Id.* On the other hand, if the plaintiff does not show good cause for failure to effectuate timely service, "a district court may grant an extension . . . but it is not required to do so." *Zapata v. City of New York*, 502 F.3d 192, 197 (2d Cir. 2007).

9

Defendants' motion to dismiss notes that Ingrid Montilla, Aidith Llewelyn, Mariel Guzman, and Christopher Tricarico, "upon information and belief, have not been properly served," and that "Betty Rosa is not a City of New York employee." Dkt. No. 52, at 2 n.1. This gave notice to the Plaintiff that failure to serve the Defendants was on the table for decision by the court. And Plaintiff responded on the merits, arguing that, even if there was not proper service, that was "a red herring" and "not a proper defense" because the Individual Defendants have received notice of the lawsuit. Dkt. No. 56, at 7.

The facts about the purported service of the five Individual Defendants are as follows: On September 27, 2024, the Clerk of Court issued summonses for the five Individual Defendants. The original complaint was never served on any defendant. However, Plaintiff purported to serve the summonses and the FAC by email. On October 22, 2024, Plaintiff docketed what counsel called an Acknowledgement of Service and "proof of service receipt." Dkt. No. 29. Plaintiff attached to the docket a screenshot of the email he sent on October 9, 2024 by which he purported to serve these five individuals through the Office of the Corporation Counsel for the City of New York. Dkt. No. 29-1.

Service by email is not a proper method of serving an individual under Fed. R. Civ. P. 4(e). The rule authorizes service on an individual by delivering a copy of the summons and complaint to him/her personally; by leaving a copy of the summons and complaint at the defendant's usual place of abode with a person of suitable age and discretion; by delivering a copy of the summons and complaint to an agent authorized to accept service of process; or in accordance with state law. New York State law, in turn, authorizes service on an individual by delivering a summons and complaint to the person to be served; or by delivering a summons to a suitable person as defined by statute, followed by mailing them to the person's last known residence address or actual place

10

of business. C.P.L.R. § 308(1)–(2). If personal service cannot be accomplished with due diligence in either of these two ways, then a process server may use "nail and mail" service, which involves affixing the summons to the place of business or residence of the person to be served and mailing the summons to that individual. *Id.* § 308(4). Neither statute authorizes service on an individual by email.

Furthermore, service on the DOE is not proof of service on these five individuals, even though at least four of them were or are employees of the DOE. Apparently Plaintiff took the position that service was properly effected because the DOE, as the employer of at least some of these individuals, was necessarily their "agent" for purposes of receiving process on behalf of its employees. But that is not the law. And Plaintiff was made aware of that fact. The Office of the Corporation Counsel for the City of New York sent Plaintiff an email accepting service "only for the City of New York and entities for which the Law Department is authorized to accept service[.]" Dkt. No. 29-1. The email expressly states that, "Service of process on any individually named parties has not been accepted" and "should continue to proceed in a manner required by applicable law." *Id.* In other words, DOE did not accept service as an agent for the individual defendants, and Plaintiff's counsel was duly notified that he needed to serve them in a manner provided for by Rule 4(e).

It is not like the DOE did not give Plaintiff all the information he needed to serve at least four of these five individuals with process in a proper manner. In an email sent to Plaintiff's counsel on December 11, 2024, Defendants asked for proof of service on each of the individually named defendants. See Dkt. No. 44-4. Plaintiff's counsel simply responded that defendants were properly served, without providing any proof of service on any of them individually. *Id.* Defendants informed Plaintiff's counsel that the individually named defendants had to be properly served.

11

Corporation Counsel even provided last known addresses for service on Ingrid Montilla, Aidith Llewelyn, Mariel Guzman, and Christopher Tricarico.

Once armed with their addresses, Plaintiff's counsel then purported to serve the First Amended Complaint, together with a summons and a civil cover sheet, on four of the five individuals – Ingrid Montilla, Mariel Guzman, Aidith Llewellyn, and Christopher Tricarico – by sending them copies via certified registered mail at the addresses provided by Defendants' counsel. See Dkt. No. 44, at 2. But once again he erred. Neither Rule 4(e) nor C.P.L.R. § 308 authorizes service made exclusively by mail. Rule 4(e) does not authorize service by mail at all; and C.P.L.R. § 308 permits service by mail only as a follow-up to delivery to a person of suitable age and discretion at the defendant's residence or to the "nailing" of a copy of those documents to the person's door. *See United States v. Real property commonly known as 26 Everett Rd., Colonie, New York 12205*, 2025 WL 2614596, at *3 (N.D.N.Y. Sept. 10, 2025) (C.P.L.R. § 308 requires that "a plaintiff must *both* mail *and personally serve* a defendant with a copy of the summons"). And even when service by mail *in conjunction with* personal service is proper under New York law, C.P.L.R. § 308 requires that it be sent via first-class, not certified, mail.

Moreover, Plaintiff alleges only that he served the First Amended Complaint on the Individual Defendants; nothing in the record suggests that Plaintiff made even a minimal effort to serve the Individual Defendants with the SAC, as is required under Fed. R. Civ. P. 5(a)(2).

There is, in short, no indication in the record that any of the four defendants has ever been served in a statutorily-compliant manner. And there is no indication that Betty Rosa – whom DOE contends is not a DOE employee, and for which it provided no address – was ever served at all. It goes without saying that well more than 90 days has passed since the filing of this lawsuit – indeed, the statute of limitations has expired on any claims other Plaintiff's termination, in which none of

12

these five individuals is alleged to have participated. Plaintiff has never asked that the Rule 4(m) deadline for service be extended.

Nonetheless, Plaintiff contends that the Individual Defendants "have in fact notice of the lawsuit, both through registered certified mail and constructively," and that the Individual Defendants did not suffer any prejudice because they "are clearly aware of the lawsuit, through the many extensions they have requested from the court." Dkt. No. 56, at 7, 17.

Contrary to Plaintiff's assertions, there is also nothing in the record to suggest that any of the Individual Defendants had constructive notice of the lawsuit or otherwise waived service. The only requests for extensions were made by Defendants DOE and Superintendent Aviles-Ramos – without any suggestion that Corporation Counsel was seeking an extension (even a protective one) on behalf of any other Individual Defendant – or by Plaintiff himself. *See* Dkt. Nos. 28, 35, 38, 46, 48, 54, 58.

Plaintiff has long been on notice of his failure to properly serve the Individual Defendants. In their motion to dismiss, filed on March 31, 2025, Defendants DOE and Ms. Aviles-Ramos asserted that the Individual Defendants had not been properly served. Plaintiff has had more than six months since Defendants' motion to dismiss was filed to demonstrate good cause for his failure to serve the Individual Defendants, which might warrant an extension under Rule 4(m). He has done nothing of the kind.

Because none of the Individual Defendants (aside from Superintendent Aviles-Ramos) was served within 90 days from the date on which Plaintiff filed his SAC – and given that Plaintiff had ample opportunity to properly serve or demonstrate good cause for his failure to serve them – any claims against the Individual Defendants must be dismissed without prejudice. *See* Fed. R. Civ. P.

4(m); *Bagarozzi v. New York City Dep't of Educ.*, 2019 WL 1454316 (S.D.N.Y. Mar. 31, 2019);

*Cioce v. Cnty. of Westchester*, 128 F. App'x 181, 183 (2d Cir. 2005).

The open issue is whether dismissal should be converted to dismissal "with prejudice" because the SAC, viewed most charitably to Plaintiff, fails to allege any viable claim against any of these five individuals. As noted above, no facts are alleged about the involvement of any of these five individuals in any act of discrimination, including specifically in connection with Plaintiff's firing. The only factual allegation relating to any of these individuals involves Guzman, with whom Plaintiff apparently had some sort of altercation back in March of 2021. Since the complaint in this action was filed in September 2024 – more than three years after than altercation took place – it would appear that any claim arising out of that incident was time barred under federal, state and local law well before this lawsuit was commenced.

Furthermore, no claim lies against Guzman in connection with this interaction pursuant to the EEOC, both for failure to exhaust administrative remedies in a timely manner and because EEOC claims may only be asserted against "an employer, employment agency labor organization, or joint labor-management committee," 42 U.S.C. § 2000e-5 – not a co-worker like Guzman. Similarly, discrimination claims under the SDHR may not be asserted against co-workers unless a coworker qualifies as an "employer," and no facts are alleged tending to show that Guzman would qualify as Plaintiff's "employer" within the meaning of the SDHR. N.Y. Executive Law § 296(1)(a). And while NYCHRL claims can be asserted against a co-worker under the SDHR, *see* N.Y.C. Admin. Code § 8–107(1)(a), there is a three year statute of limitations for claims brought pursuant to the NYCHRL, *Moore v. Metro. Transp. Auth.*, 999 F. Supp. 2d 482, 494 (S.D.N.Y. 2013). The only allegation in the complaint against Guzman is for an interaction that took place on March 8, 2021,

which was more than three years prior to the filing of the original complaint in this action on September 23, 2024.

Because the court is denying Plaintiff leave to further amend his complaint – he has, after all, had three chances to plead proper claims – the court would ordinarily *sua sponte* convert this to a dismissal with prejudice against Ingrid Montilla, Aidith Llewellyn, Mariel Guzman, Christopher Tricarico, and Betty Rosa. However, in order to make sure that the court gives Plaintiff notice and an opportunity to be heard, he has ten business days from the date of this decision to explain why the claims against all five of these unserved individuals should not be dismissed with prejudice. If Plaintiff fails to demonstrate good cause why the complaint should not be dismissed with prejudice against these five individuals, the court will convert the dismissal without prejudice to a dismissal with prejudice.

I remind Plaintiff's counsel of his obligations under Fed. R. Civ. P. 11.

### Any Claims Against John Doe Defendants are Dismissed

The John Doe defendants are named only in the caption. The SAC alleges no facts about who any of them might be or what any of them did that constitutes actionable discrimination under any statute. In fact, the SAC alleges not a single fact about any John Doe. That being so, Plaintiff has failed to state a claim against the John Doe defendants. Accordingly, the court *sua sponte* dismisses the complaint as to the John Doe defendants. *See Hanks v. City of Syracuse*, 2022 WL 4619877, at *1 n.2 (N.D.N.Y. Sept. 30, 2022), *aff'd*, 2023 WL 8889764 (2d Cir. Dec. 26, 2023); *Briggs v. Cnty. of Monroe*, 2016 WL 1296060, at *8 (W.D.N.Y. Mar. 29, 2016), *report and recommendation adopted*, 215 F. Supp. 3d 213 (W.D.N.Y. 2016).

### II.    Plaintiff's Fifth Cause of Action for "*Monell* Liability" is Dismissed as Against the City of New York – the Only Defendant on a Monell Claim

15

Plaintiff alleges a violation of his constitutional rights under *Monell v. Department of Soc. Svcs.,* 436 U.S. 658 (1978). He asserts this claim against Ms. Aviles-Ramos and the Individual Defendants, both in their official and personal capacities.

But a *Monell* claim cannot be pleaded against an individual. Defendants are correct that an officer sued in her personal capacity is not a proper defendant on a claim premised on *Monell*. *See Kweller v. Cnty. of Broome*, 2025 WL 2719897, at *41 (N.D.N.Y. Sept. 24, 2025).[4] And a *Monell* claim asserted against an individual defendant acting in her official capacity is treated as a suit against the municipality. *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Perez v. Annucci*, 2019 WL 1227801, at *4 (S.D.N.Y. Mar. 15, 2019). Accordingly, the court will dismiss the "*Monell*" claim against Superintendent Aviles-Ramos, and will analyze Plaintiff's *Monell* claim as though it had been asserted against the proper defendant, which is the City of New York in the person of DOE.[5] Since no *Monell* claim can lie against any of the Individual Defendants – who have already been dismissed for failure to serve – the conversion of the *Monell* claim does not impact the discussion of the claims against them in the preceding section; any *Monell* claim against them is necessarily dismissed because *Monell* only authorizes suit against a municipality.

"[M]unicipalities may be sued directly under § 1983 for constitutional deprivations inflicted upon private individuals pursuant to governmental custom, policy, ordinance, regulation, or decision." *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) (citing *Monell*, 436 U.S. at 690–91, 98). "[T]o hold a [municipality] liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom

---

[4] This being so, there is no need to discuss the City's alternative argument that nothing in the SAC indicates that Superintendent Aviles-Ramos personally participated in any matters involving the Plaintiff – and I decline to do so in connection with any discussion of *Monell.*

[5] A suit against a City agency is properly brought against the municipality rather than the agency. *See Hafer*, 502 U.S. at 25.

that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Id.* "*Monell* does not provide a separate cause of action . . . it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York*, 459 F. 3d 207, 219 (2d Cir. 2006).

As near as I can make out, the essence of the so-called M*onell* claim is that the Defendants somehow deprived Plaintiff "of his constitutional right to a timely Title VII action" by sending him on a "wild goose chase (an alternative grievance process)," in which he was obligated to participate under "Article XX, Union 37." SAC, ¶¶ 56, 58. Because Plaintiff, a unionized employee, was subject to a CBA, I gather he is trying to argue that claims he might otherwise have asserted became time-barred, and hence moot, because of the pendency of union grievances. Plaintiff contends that Defendants "deliberately created the alternation union 37 grievance process to circumvent Title VII" because this policy "allows the New York City Board of education to take as much time as it wishes, while depriving an injured party, such as Barrera, of the statutory 300 days window to claims." SAC, ¶¶ 59–60. He further asserts that the policy is "willful and designed to circumvent Title VII 300 day deadlines," and that it is "fact based and evident through practice affecting not only Mr. Barrera but a group of individuals who have used the same process." SAC, ¶¶ 59, 61. Significantly, Plaintiff does not allege any facts tending to suggest that he ever filed a union grievance about any particular action that he contends was discriminatory. He also does not identify any individual who was similarly deprived of any right.

The only conceivable *Monell* claim that Plaintiff could assert against the City – the only possible denial of a federal constitutional right he might arguably be claiming – would be a claim that something the City did denied him access to the courts, by preventing him from filing timely charges with the EEOC or the SDHR concerning discrete acts of discrimination. Of course, such

a contention is hardly "plausible," given that Plaintiff managed to file a timely EEOC charge about his dismissal and to bring this lawsuit. But even without considering that undeniable fact, nothing is pleaded in the SAC tending to suggest that the City, by following CBA procedures when a unionized employee files a grievance, somehow denies that employee access to the courts.

Plaintiff attaches a portion of the CBA between his Union and the DOE to his SAC. It covers "hourly school lunch employees" like himself. The document he attaches was in effect from July 1, 2005 – March 2, 2010. *See* SAC, Ex. 3. Plaintiff does not allege that it was extended by its terms or that this was the CBA in effect during the period 2021-23, which is the period encompassed by this lawsuit. However, because the court has some experience with the repeated extension of CBAs, I will assume, for purposes of argument, that the CBA Plaintiff attached to his pleading was in effect during the relevant period.

The SAC fails to allege that anything in the CBA prevented the Plaintiff from vindicating his rights under any local, state, or federal anti-discrimination statute, and nothing in the portion of the CBA that is attached to the pleading suggests that Plaintiff was so prevented. Article XX of the Agreement, entitled "Complaint and Grievance Procedures Policy," discusses how an employee can adjudicate a complaint informally. It also sets a time limit of 75 days from an action complained of for filing a formal grievance with the Union. Plaintiff does not point to a single word in Article XX that prohibits a unionized employee from availing himself of his statutory rights under any anti-discrimination statute until he has gone through a union grievance process. Put otherwise, nothing in Article XX as pleaded prevented Plaintiff from filing an EEOC charge within 300 days of experiencing an act of discrimination – even if he had a union grievance pending and not fully resolved when the 300 day window was closing.

18

Nor could it have. Congress gave employees the right to file claims of discrimination against their employers, subject only to the requirement that they exhaust their administrative remedies with the EEOC prior to filing. That there may be other avenues for addressing an employee's dispute with his employer – including avenues provided by an employee's union via a collective bargaining agreement negotiated by the employer and the union[6] – does not mean that there has been any interference with the unionized employee's right to access the courts.

Moreover, even if there were something to Plaintiff's position that DOE's participation in the CBA grievance process rendered it impossible for him to file a timely EEOC charge – or, put otherwise, that the City had a policy and practice of taking too long to process grievances that union members file pursuant to the CBA, thereby interfering with their ability to file an EEOC charge – Plaintiff has not pleaded any facts tending to show that the processing of any grievance that *he* filed was not completed within 300 days of the act of discrimination. Pleading such facts is a necessary predicate to the assertion of a claim that the City violated his constitutional right to access the courts.[7] Significantly, Plaintiff does not even plead that he ever filed an Article XX grievance relating to any of the matters that took place in 2021, as alleged in Paragraphs 29 through 37 of the SAC. That being so, it is impossible for him to allege plausibly that something in the way the City handled union grievances constitutes a "wild goose chase" that prevented him from vindicating his rights under Title VII by filing a timely charge with the EEOC or the SDHR.

---

[6] If the grievance procedure in the CBA actually did interfere with Plaintiff's access to the courts, it would seem that his claim would lie against the Union – for ineffective representation. *See Spellacy v. Airline Pilots Ass'n-Int'l*, 156 F.3d 120, 126 (2d Cir. 1998).

[7] I would point out that Plaintiff is not appearing *pro se*. He is represented by an attorney, who is supposed to know what he is doing. This court is not required to construe a claim filed by an attorney in the same manner as a claim filed by a *pro se* plaintiff – namely, I am not required to interpret the pleading as asserting the strongest claim it can reasonably be interpreted to assert. *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013). The court has nonetheless done precisely that – construed the claim in a manner that far exceeds what is actually pleaded (the words "access to courts" appears nowhere in the SAC) – in order to establish that this claim is baseless and should be thrown out on motion before we waste any more of the court's or the City's time.

In short, Plaintiff pleads no facts tending to show that any provision of the CBA between his Union and the DOE deprived him of the right to file an EEOC charge (or, for that matter, an SDHR charge, or a claim under the NYCHRL) any time he wanted to – let alone that the City was deliberately taking action with respect to any specific pending grievances that prevented Plaintiff from asserting his rights under any of those statutes. That being so, he fails to state a claim for any constitutional violation against the City of New York, or plausibly allege that any policy or practice of the DOE denied him access to the courts to vindicate his discrimination claims under (specifically) Title VII. Therefore, the Fifth Cause of Action– properly restyled as a claim against the City of New York – is dismissed.

Because Plaintiff has had three chances to plead a *Monell* claim and certainly cannot cure the defects in the most recent one, dismissal is with prejudice.

### III.    Plaintiff's Sixth Cause of Action is Dismissed Because His SHRL and NYCHRL Claims are Procedurally Barred

Defendants argue that Plaintiff's SHRL and NYCHRL claims must be dismissed because Plaintiff failed to comply with New York Education Law § 3813(1), which requires a plaintiff asserting employment discrimination claims against the DOE to file a written notice of claim within 90 days of the alleged conduct. Dkt. No. 52, at 8. Defendants further argue that Plaintiff's SHRL and CHRL claims are barred by the election of remedies doctrine, which precludes court consideration of any claim arising out of the same incident on which an SDHR complaint was based. Dkt. No. 52, at 7.

New York Education Law § 3813(1) states that no action shall proceed against the DOE unless "it shall appear by and as an allegation in the complaint or necessary moving papers that a written verified claim upon which such action . . . is founded was presented to the governing body

20

of said district or school within three months after the accrual of such claim." N.Y. Educ. Law §
3813(1).

The parties do not contest that Plaintiff was required to file a written notice of claim before
bringing this lawsuit. But they disagree over whether such a notice of claim was properly filed.
Plaintiff alleges that he "filed a timely notice of claim with the City of New York in December of
2023," and says that he is in the process of locating a copy. SAC, ¶ 56. Defendants disagree,
alleging that Plaintiff failed to file a notice of claim. Dkt. No. 52, at 8.

Plaintiff has yet to provide the court with a copy of the notice of claim he allegedly filed.
He should have found it by now. It is Plaintiff's burden to prove that he filed the requisite notice
of claim. He has not met that burden.

But Plaintiff argues that his EEOC and SDHR charges satisfy the notice of claim
requirement. He is wrong.

In in rare circumstances, the filing of an administrative charge can be deemed to satisfy the
notice of claim requirement. *See Bagarozzi v. New York City Dep't of Educ.*, 2019 WL 1454316, at
\*4 (S.D.N.Y. Mar. 31, 2019) (collecting cases). However, in order to qualify under the *Bagarozzi*
rule, the charge must be filed within 90 days of the act of discrimination that is the subject of the
charge – the 90 day limitations period being required by §3813 of the Education Law.

Plaintiff complains about his termination – indeed, he makes a very big deal about saying
that only his termination is the subject of the instant complaint.[8] He was fired on July 23, 2023.
SAC, ¶ 12. 90 days after that date is October 23, 2023. But Plaintiff did not file his administrative

---

[8] *See* SAC, ¶ 12 ("Plaintiff's claims based on events that allegedly occurred prior to December 5, 2022, are time-
barred. Plaintiff received a final termination on July 23, 2023 – it is this process he appeals as onerous"); Dkt. No. 56,
at 13 ("Therefore, all SHRL and CHRL claims stemming from allegations that occurred before September 23, 2023,
are time-barred, is a correct assertion – but plaintiff is not seeking redress for time-barred claims. But for his final
dismissal, as the ultimate injury – and counting the time-frame form that date.").

charges until December 5, 2023 – 135 days after he was fired. Therefore, those charges cannot be relied on to satisfy the notice of claim requirement under Ed. L. § 3813(1). *See Rubin v. New York City Bd. of Educ.*, 2023 WL 1972729, at *16 (S.D.N.Y. Jan. 6, 2023), *report and recommendation adopted*, 2023 WL 2344731 (S.D.N.Y. Mar. 3, 2023).

Plaintiff's argument for why his administrative charges were timely under Ed. L. § 3813(1) does not wash. He says the EEOC and SDHR charges qualify as a timely "notice of claim" because they were filed "within 90 days of the notice that his appeals had failed in the union process." Dkt. No. 56, at 12.

But the date on which his union grievance ended is irrelevant. The statute required that a notice of claim be filed within 90 days *of the date on which the act of discrimination occurred*. The allegedly discriminatory act was firing him – not losing his grievance. Plaintiff had notice that he had been fired on July 23, 2023, and the 90 days runs from that date – not from some later date on which his termination was upheld in a grievance process. This is true even if the Plaintiff continued to work while the grievance was pending. *See Pinder v. City of New York*, 49 A.D.3d 280, 281 (2008).

There is no question that December 5 was more than ninety days after July 23. So under no set of circumstances can the filing of Plaintiff's administrative charges be deemed the *timely* filing of a notice of claim. Plaintiff's failure to file such a notice within 90 days of the date on which he was fired is fatal to his claim. *See Wesley–Dickson v. Warwick Valley Cent. Sch. Dist.*, 973 F. Supp. 2d 386, 411 (S.D.N.Y. 2013).

The claims asserted in the SAC pursuant to the NYSHRL and the NYCHRL are, therefore, dismissed with prejudice as procedurally barred. *See McCabe v. Lifetime Ent. Servs., LLC*, 2018 WL 1521860, at *8 (E.D.N.Y. Jan. 4, 2018), *subsequently aff'd*, 761 F. App'x 38 (2d Cir. 2019).

Because Plaintiff failed to comply with the notice of claim requirement, the court need not consider whether consideration of those claims is precluded by the election of remedies doctrine.

## IV.  Plaintiff's Seventh Cause of Action is Dismissed Because His Claim of Negligent Infliction of Emotional Distress is Procedurally Barred And Fails on the Merits

Plaintiff Seventh Cause of Action asserts a claim for negligent infliction of emotional distress.

Defendants argue that, like his NYSHRL and NYCHRL claims, Plaintiff's claim for negligent infliction of emotional distress is procedurally barred because he failed to file a timely notice of claim pursuant to New York Education Law § 3813(1). Even if Plaintiff's negligent infliction of emotional distress claim were not procedurally barred, Defendants argue, the claim should still fail because Plaintiff has not alleged that Defendants owed him a special duty as required under the law. Dkt. No. 52, at 21.

Both arguments are correct.

Plaintiff's claim for negligent infliction of emotional distress is procedurally barred because, for the reasons discussed above, Plaintiff has not adequately alleged that he timely filed a written notice of claim or otherwise fulfilled § 3813(1)'s administrative requirements. *See Warner v. Vill. of Goshen Police Dep't*, 256 F. Supp. 2d 171, 175 (S.D.N.Y. 2003).

In any event, Plaintiff fails to state a claim for negligent infliction of emotional distress because the SAC does not plead any facts tending to show that Defendants owed Plaintiff a "special duty," as is required to state a claim for negligent infliction of emotional distress under New York law. *See R.M. Bacon, LLC v. Saint-Gobain Performance Plastics Corp.*, 959 F.3d 509, 516 (2d Cir. 2020). This special duty "must be specific to the plaintiff, and not some amorphous, free-floating duty to society." *Chau v. Donovan*, 357 F. Supp. 3d 276, 289 (S.D.N.Y. 2019). The employer-employee relationship does not give rise to any "special duty" that could undergird liability for

23

negligent infliction of emotional distress, because an employer has an obligation to treat all employees in the same manner. *Kelly v. Chase Manhattan Bank*, 717 F. Supp. 227, 235 (S.D.N.Y. 1989); *Alexander v. Westbury Union Free Sch. Dist.*, 829 F. Supp. 2d 89, 112 (E.D.N.Y. 2011).

Plaintiff's claim for negligent infliction of emotional distress is, therefore, dismissed with prejudice.

## V.    Plaintiff's Title VII and ADA Claims

### A.  Plaintiff's First, Third, and Fourth Causes of Action are Time-Barred

Defendants urge the court to dismiss Plaintiff's Title VII and ADA claims on the basis that these claims are time-barred, because Plaintiff failed to file a timely charge with the EEOC pursuant to 42 U.S.C. § 2000e–5(e). Dkt. No. 52, at 10–11.

Prior to filing a Title VII or ADA claim, a plaintiff must first file a timely charge with the EEOC. 42 U.S.C. § 2000e–5(e). In New York, where the New York State Division of Human Rights addresses claims of employment discrimination, the statute of limitations for filing a claim with the EEOC is 300 days. *See Bascom v. Fried*, 116 F. App'x 300, 302 (2d Cir. 2004). The 300-day period begins to run on the date the employee received notice of the discriminatory action. *Id.*

Plaintiff alleges that he filed an EEOC charge on December 5, 2023. SAC, ¶ 18. This is well within 300 days from when Plaintiff was notified of his termination on July 23, 2023. Accordingly, Plaintiff's Title VII and ADA claims are not time-barred with respect to his final termination.

However, to the extent Plaintiff's claims are based on conduct which occurred prior to February 8, 2023 – 300 days before Plaintiff filed his charge or charges, which was on December 5, 2023 – any federal claims would be time-barred.

24

The SAC states that, "In the event that there are any discrepancies between the filing deadlines, plaintiff asserts *equitable estoppel* proactively to allow the Title VII claims because defendants caused the delays, affecting this lawsuit indirectly." SAC, ¶ 12. In the same paragraph, however, Plaintiff alleges that he is challenging the internal processes surrounding his final termination on July 23, 2023, which he claims "indirectly depriv[ed] him of his EEOC remedies under Title VII." *Id.* I assume this alludes to the same thing that Plaintiff tried to plead in his *Monell* claim – that the existence of a union grievance process somehow deprived him of access to his federal remedies. For the reasons discussed above, that dog won't hunt. Moreover, Plaintiff timely filed an EEOC complaint within 300 days of his termination, and Defendants have not challenged the timeliness of this lawsuit. Accordingly, the doctrine of equitable estoppel has no application here.

Plaintiff's failure to file a timely notice of claim is fatal to any claim arising out of his contention that Defendants subjected him "to a continued atmosphere of adverse employment actions from at least June 2010 through Plaintiff's termination in April 2016" in violation of Title VII. SAC, ¶ 53. All allegations supporting this claim are far outside the limitations period and so are barred.

The same is true for Plaintiff's Title VII hostile work environment claim. Plaintiff alleges that Defendants subjected him to a hostile work environment based on his national origin, disability, and age" by "pervasively making national origin, age based *disparate* treatment in the workplace, including, *inter alia*, asking Plaintiff write-ups that were manufactured for the simplest of reasons intended to paint plaintiff as a bad worker." SAC, ¶ 47. Plaintiff claims that, "These write-ups, or suspensions, were not episodic but continuous, planned and willful." SAC, ¶ 47.

But in order to state a viable claim for hostile work environment, Plaintiff must allege facts tending to show that he was subjected to a hostile work environment within the meaning of Title VII,[9] and that at least one act that created the hostile work environment took place within the 300 day window prior to the filing of his charge. But the only allegation of fact in the SAC that occurred after February 8, 2023 – 300 days before the filing of the charge – is Plaintiff's termination. Any other fact allegations took place in 2021 or earlier, well outside the limitations period. Plaintiff has, therefore, failed to plead a timely Title VII claim of hostile work environment.

Plaintiff's claim that Defendants refused to accommodate his disability in violation of the ADA is similarly time-barred. Plaintiff alleges that he "has a predisposed genetic disability, blindness in the left eye," and that "Defendants deliberately engaged in abuse of his disability to cause harm to his job by demanding work duties that ignored his disability." SAC, ¶¶ 51–52. The SAC does not allege when these actions supposedly occurred, but simply states that Defendants refused to accommodate Plaintiff's disability "when so required after the first arbitration." SAC, ¶ 49. The SAC's only other reference to the "first arbitration" is in Paragraph 6, which states, "In 2017, Mr. Barrera received a favorable decision, dismissing a 2014 one day suspension. This was over two years later. First arbitration. Second instance in which the 300-day window was violated." SAC, ¶ 6. The court cannot determine from the SAC exactly when the first arbitration occurred, but one can fairly infer that it took place prior to February 8, 2023, which puts it outside of the limitations period.[10]

---

[9] A hostile work environment requires a showing that (1) the harassment was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," and (2) a specific basis exists for imputing the objectionable conduct to the employer. *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002).

[10] This is one of many instances in which the manner of pleading causes of the court to wonder whether the plaintiff himself, rather than the attorney who signed the pleading, actually drafted the SAC.

Plaintiff's ADA claim and Title VII claims for "hostile work environment" and "atmosphere of adverse actions" are therefore dismissed with prejudice as time-barred.

Plaintiff's ADA claim is also subject to dismissal on the basis that the SAC fails to allege that Plaintiff was disabled within the meaning of the ADA. Plaintiff's allegation that he has a congenital eye defect rendering his left eye blind, without more, is not sufficient. Plaintiff has not alleged that "the extent of the limitation in terms of [his] own experience, as in loss of depth perception and visual fields, is substantial," or otherwise alleged facts tending to show that he has an impairment that substantially limits a major life activity, which is the *sine qua non* of an ADA violation. *Hoehn v. Int'l Sec. Servs. & Investigations, Inc.*, 244 F. Supp. 2d 159, 167 (W.D.N.Y. 2002) (quoting *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 567 (1999)).

### B.  Plaintiff's Second Cause of Action Fails to State a Claim for Retaliation

The only remaining Title VII claim in the SAC is a claim for retaliation.

Plaintiff alleges that Defendants "subjected [him] to adverse employment actions, including termination because of his complaints of discrimination and harassment," as evidenced by "Defendant's failure to conduct a proper investigation and to discipline the offender; disapproving Plaintiff's time and leave; accusing Plaintiff of improperly performing various functions of his job; trying to sabotage Plaintiff's employment by providing him with improper instructions of how to perform his job duties; threatening Plaintiff with termination." SAC, ¶ 48.

Unlike Plaintiff's other Title VII and ADA claims, the requirement that a plaintiff file a timely EEOC charge is not fatal to Plaintiff's retaliation claim, because at least some of the underlying conduct – namely, Plaintiff's July 23, 2023 termination – occurred within the limitations period. And while conduct occurring before February 8, 2023, is not independently actionable, it can be considered in connection with a retaliation claim.

However, Defendants argue that, to the extent this claim is not time-barred, it should be dismissed because the SAC fails to state a claim for retaliation under Title VII.

Title VII makes it unlawful for an employer to discriminate against an employee "because he [or she] has opposed any practice made an unlawful employment practice by this subchapter, or because he [or she] has made a charge . . . in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a).

Retaliation claims are analyzed under the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green* (the "*McDonnell Douglas* framework"). 411 U.S. 792 (1973); *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013). Under *McDonnell Douglas*, the burden initially falls on a plaintiff to plead a *prima facie* retaliation case. To state a *prima facie* case, a plaintiff must allege (1) that he participated in a protected activity, (2) that his participation was known to his employer, (3) that his employer thereafter subjected him to a materially adverse employment action, and (4) that there was a causal connection between the protected activity and the adverse employment action. *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010). The plaintiff's burden of proof at the prima facie stage is *de minimis*. *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010). If and when the initial burden is met by the plaintiff, a "presumption of retaliation" arises, which the defendant may rebut by "articulating a legitimate, non-retaliatory reason for the adverse employment action." *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005). If the defendant provides such a reason, "the presumption of retaliation dissipates," and the burden shifts back to the plaintiff to prove "that the desire to retaliate was the but-for cause of the challenged employment action." *Id.* (citation omitted).

Defendants do not challenge Plaintiff's ability to make out a *prima facie* case for the first three prongs. In other words, Defendants concede that Plaintiff alleges that he engaged in a

protected activity by making "complaints of discrimination and harassment." SAC, ¶ 38. The SAC is not sufficiently specific about what this complaint was or when this occurred, but this could be referring to his two SDHR charges or to informal charges or union grievances that are not specifically identified in the pleading.

Defendants argue only that Plaintiff fails to state a plausible retaliation claim because he does not plead that the filing of these "complaints" was the but-for cause of the alleged adverse actions. Dkt. No. 52, at 20.

To adequately plead causation, a plaintiff must plausibly allege that the retaliation was a "but-for" cause of the employer's adverse action. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015). In the Second Circuit, causation can be shown either directly, through evidence of retaliatory animus directed against the plaintiff by the defendant, or indirectly, by showing that the protected activity was followed closely by discriminatory treatment or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct. *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000).

Plaintiff has not plausibly alleged either direct or indirect causation. The SAC is completely devoid of facts that would tend, if believed by the trier of fact, to show that anyone had any retaliatory animus toward the Plaintiff for engaging in any protected activity.

Nor does the SAC include any factual allegations that would, if believed, prove causation indirectly. The only "complaint of discrimination and harassment" that Plaintiff specifically identifies in the SAC that was made prior to his July 2023 termination was his July 2019 SDHR complaint. That was four years before Plaintiff was fired. This instance of protected activity is far too remote in time from the date he was fired (July 23, 2023) for Plaintiff to plausibly plead causation plausibly based on temporal proximity. *See Stanley v. City Univ. of New York*, 2023 WL

2714181, at *15 (S.D.N.Y. Mar. 30, 2023), *aff'd sub nom. Stanley v. Phelon*, 2024 WL 1453872 (2d Cir. Apr. 4, 2024) ("Generally speaking, recent case law suggests that a period no longer than two months permits an inference of causal connection.").

As noted repeatedly above, Plaintiff does not allege that he filed any other complaint of discrimination with anyone – including his union – on any specific date. The failure to plead that he engaged in some act of protected activity within a few months prior to his termination is fatal to his alleging indirect causation.

Additionally, despite the prolixity of his pleading, Plaintiff has not alleged any facts tending to show that similarly situated employees were treated differently than he was, so as to raise an inference that his filing of an SDHR complaint played a role in his termination. If anything, Plaintiff's own allegations demonstrate that he was terminated because of his poor work performance, as evidenced by an extensive disciplinary history that began long before Plaintiff ever filed an EEOC or SDHR complaint. *See, e.g., Slattery v. Swiss Reinsurance America Corp.*, 248 F.3d 87, 95 (2d Cir. 2001); *Forrest v. New York City Hous. Auth.*, 2023 WL 3203646, at *9 (S.D.N.Y. May 2, 2023).

The only question is whether to dismiss the retaliation claim with or without prejudice. The SAC represents Plaintiff's third attempt to plead a viable Title VII claim. In litigation as in baseball, three strikes means you're out. There is no reason to believe that allowing Plaintiff a fourth bite at the apple would lead to a different result. *See Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011).

Accordingly, Plaintiff's Title VII retaliation claim is dismissed with prejudice.

## CONCLUSION

The motion to dismiss is GRANTED and the complaint is dismissed WITH PREJUDICE.

The Clerk of Court is respectfully requested to remove the motion at Dkt. No. 51 from the court's

list of open motions, and to close the file.

This is a written opinion.

This constitutes the decision and order of the court. It is a written decision.

Dated: November 17, 2025

U.S.D.J.

BY ECF TO ALL COUNSEL

31